**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Center for Biological Diversity,
378 N. Main Avenue
Tucson, AZ 85701,

*Plaintiff*,

v.

U.S. Fish and Wildlife Service,
1849 C Street NW
Washington, DC 20240,

*Defendant*.

Case No. 26-3973

# COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1. Plaintiff Center for Biological Diversity ("the Center") brings this case under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the United States Fish and Wildlife Service ("FWS" or "Service") to disclose 2025 U.S. import and export data regarding wildlife and plants, many of which are imperiled species.

2. Each year, the United States allows the import of hundreds of millions of wildlife and plant specimens from around the world. These imports include everything from aquarium fish and turtles destined for the pet trade, to python-skin boots and fur trimmed jackets, to corals, orchids, bones, skulls, and shells used for home decor, to lions and elephants killed as hunting trophies, as well as zoological and scientific specimens.

3. In addition to these imports, the United States is also a major wildlife exporter, shipping native turtles around the world to become pets or food, as well as bobcat and otter furs, alligator skins, American ginseng root, and other products derived from native species.

4. As one example, the United States is a major player in the international pet trade, importing more than 90 million live amphibians, arachnids, birds, aquarium fish, mammals, and reptiles each year and exporting about 17 million wildlife for the pet trade. Between 2016 and 2024, some 248 million pet imports were sourced from the wild and over 24 million wild-caught animals were exported for the pet trade. The trade includes rare and imperiled species ranging from peacock tarantulas and Home's hingeback tortoises to African red-eyed tetras and Pebas stubfoot toads.

5. Exploitation of wildlife and plants for international trade is a key driver of biodiversity loss.

6. For wildlife specimens to be imported into or exported from the United States, the specimens must be cleared by the Service, regardless of whether the specimen is intended for commercial trade, scientific research, breeding, education, exhibition, personal use, or as a hunting trophy, with narrow exemptions. 50 C.F.R. § 14.52; *but see id.* § 14.55 (listing exemptions). To facilitate clearance, importers and exporters must submit a wildlife declaration (USFWS Form 3-177) that reports basic information including, *inter alia*, (1) the date and purpose of the import or export; (2) the species' name and country of origin; (3) quantity of specimens imported or exported; (4) whether the specimens came from the wild or were produced in captivity; and (5) the port of import or export. *Id.* §§ 14.61, 14.63.

7. All this information is recorded by the importer or exporter on the wildlife declaration, USFWS Form 3-177. The Service inputs data from the wildlife declarations into its Law Enforcement Management Information Systems ("LEMIS") database, which also documents whether the Service cleared or refused shipments at the border.

8. These data are critical to the public. Conservation and environmental organizations use the data to track which species of wildlife the Service allows to enter and leave the United States, from where, by and to whom, and in what quantity. The data are used to analyze which species may be most affected by trade; to seek international and domestic protections for such species as needed; monitor illegal trade; and to determine whether the United States and other countries are meeting legal obligations such as trade quotas.

9. The LEMIS data are also used by journalists to promote public knowledge about the impacts of trade on species and the environment.

10. Scientists use the data to research and write about the impacts of trade on species, study diseases and their emergence, and research the laundering and trafficking of wildlife.

11. Similarly, export data are used to track trade in species that originated in the United States and to ensure exporters comply with all legal obligations.

12. Without the customarily provided LEMIS data, which were routinely provided in the past, the public cannot identify which species are being traded, where they are coming from or going to, and for what purpose—all of which impairs efforts to seek protections for affected wildlife and plants. The United States plays a significant role in demand for wildlife and plants and their products worldwide, and the United States is the only country globally that tracks in detail all wildlife crossing its borders. Consequently, LEMIS data are globally unique and critical to the conservation of species.

13. For years, the Service routinely released data from its LEMIS database to the public when requested under FOIA, providing, among other information, the quantity, names of foreign and U.S. importers and exporters, country of origin, and other details about the trade.

14. For example, the Service released the 2021–2024 LEMIS data in full under the FOIA to the Center with the exception of names of commercial importer/exporter companies, instead providing an additional column of information identifying the relevant industry category for import/export shipments.

15. On July 8, 2026, the Center submitted a FOIA Request to the U.S. Fish and Wildlife Service for LEMIS data generated between January 1, 2025, through December 31, 2025. The Service has not disclosed that data as of the date of this Complaint.

16. The Service's failure to make this critical information publicly available greatly impairs the Center's ability to carry out its work to conserve and protect species in trade. Accordingly, the Center seeks an order compelling prompt disclosure of the requested records.

## JURISDICTION AND VENUE

17. Jurisdiction over this action is conferred by FOIA, 5 U.S.C. § 552(a)(4)(B).

18. Venue is proper in the District of Columbia pursuant to 5 U.S.C. § 552(a)(4)(B), because the agency records are situated in this judicial district.

## PARTIES

19. Plaintiff Center for Biological Diversity ("the Center") is a 501(c)(3) non-profit conservation organization with over 130,000 members. Its headquarters are in Tucson, Arizona, and it maintains several other offices across the United States and in Mexico and Canada. Through science, policy, and law, the Center advocates for the protection of threatened, endangered, and rare species and their habitats throughout the United States and abroad. The Center's International Program focuses on protecting foreign imperiled species, including from overexploitation, and their habitats.

20. The Center is the requester of the information at issue. The organization and its members are harmed by the Service's failure to disclose the information that is responsive to the Center's FOIA request. This violation of law precludes the Center from understanding the type, quantity, purpose, and other important information about wildlife and plant imports and exports that the Service allowed into and out of the United States in 2025.

21. Import and export information is critical to the Center and its International Program's operations. Center staff use the data on a regular basis to: track which species are being used most in trade; determine the volume of trade in particular species to evaluate whether trade is a threat to the conservation of a particular species; ascertain the purpose of commercial trade, e.g., whether trade is for pets and aquarium specimens, decorative, fashion, medicinal, or hunting trophy purposes; determine the country of origin of the species; the volume of wildlife and plants being removed from the wild; and for many other purposes. The requested data and the Center's subsequent analyses help inform and prioritize the Center's organizational strategy, including determining which species may require additional study, scientific research, advocacy for domestic and international protections, and increased public education.

22. The Center collects, distills, and distributes the data to keep its members and the public informed about the need for critical species protections and the impacts of the U.S. market on wildlife. The Center further depends on the data when producing reports, petitions, and other educational and advocacy materials that detail for its members and the public the impact of wildlife trade on specific species, as well as the impact on human and wildlife health. The Center also relies on LEMIS data to inform Congressional representatives, their staff, and other government and agency officials about the volume of wildlife trade and resulting impacts, as

well as the need to develop and enact legislation, adopt regulations, and seek international reforms or measures to address the impacts.

23. The Center's interests and activities are adversely affected by the Service's failure to disclose the requested LEMIS data. This injury will be redressed if the Court orders the Service to disclose the requested records.

24. Defendant United States Fish and Wildlife Service ("the Service") is a federal governmental agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and has possession and control of the records at issue.

## STATUTORY AND FACTUAL BACKGROUND

### A. The Freedom of Information Act

25. The Freedom of Information Act ("FOIA") ensures both an open government and government accountability through transparency. FOIA requires that "each agency, upon any request for records . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3).

26. To ensure prompt disclosure of information, FOIA imposes strict deadlines on federal agencies for responding to FOIA requests. Specifically, upon receiving a FOIA request, an agency has 20 working days to respond to the request. 5 U.S.C. § 552(a)(6)(A)(i). A requester is deemed to have exhausted its administrative remedies and may seek immediate judicial review of the matter if the agency fails to comply with this statutory deadline. *Id.* § 552(a)(6)(C)(i).

27. Under FOIA, an agency may withhold information only if it qualifies under one of nine narrowly construed statutory exemptions. 5 U.S.C. § 552(b)(1)–(9). The agency bears the burden of proving that the information qualifies for an exemption and may therefore be lawfully withheld. *Id.* § 552(a)(4)(B). If the agency determines that a portion of a responsive record is

exempt from disclosure, the agency must nonetheless disclose "[a]ny reasonably segregable portion" of the record after redacting the exempt information and the agency must explain why the redacted portions were withheld. *Id.* § 552(b).

**B. The LEMIS Data**

28. The Endangered Species Act ("ESA") requires that "any person" importing or exporting "fish or wildlife" or plants must, *inter alia*: (1) obtain permission from the Service; (2) allow for inspection; and (3) file required import or export declarations. 16 U.S.C. § 1538(d)(1), (2), (e).

29. Pursuant to this authority under the ESA and other statutes that govern and restrict importation and exportation of wildlife and plants into the United States, including the Lacey Act, 16 U.S.C. §§ 3371–3378; 18 U.S.C. § 42; Migratory Bird Treaty Act, 16 U.S.C. §§ 703–712; African Elephant Conservation Act, 16 U.S.C. §§ 4201–4246; and Wild Bird Conservation Act, 16 U.S.C. §§ 4901–4916, the Service's regulations require that a Service officer "must clear all wildlife imported into the United States prior to release from detention by Customs officers" with limited exemptions or "must clear all wildlife to be exported from the United States prior to the physical loading" of the shipment. 50 C.F.R. §§ 14.52(a), 14.55.

30. To facilitate clearance, importers and exporters must submit a wildlife declaration on Form 3-177 that reports specific data, including, *inter alia*, (1) the date and purpose of the import or export; (2) the species' name; (3) the country of origin; (4) the quantity of specimens imported or exported; (5) whether the specimens were obtained from the wild; (6) the relevant permit and document numbers that apply to the import; and (7) the names of importers, exporters, and carriers involved in the import or export. 50 C.F.R. §§ 14.61, 14.63; Form 3-177.

31. The Service then inputs data from these declarations into the LEMIS database. The agency also denotes in the database whether the Service cleared or refused the import or export and whether the item was confiscated by the government or abandoned by the shipper.

**C. The Center's FOIA Request**

32. On July 8, 2026, the Center submitted a FOIA request to the Service for LEMIS data generated between January 1, 2025, through December 31, 2025. Specifically, the Center sought access to the information recorded in the following LEMIS database columns:

(a) Control number,

(b) Species name (including species code, genus, species, subspecies, specific name, and generic name),

(c) Wildlife description,

(d) Quantity/unit/number of cartons,

(e) Country of origin,

(f) Country of import/export,

(g) Purpose code,

(h) Source code,

(i) Action (cleared or refused),

(j) Disposition,

(k) Date of import/export,

(l) Whether specimen is an import or export,

(m) Port,

(n) Transport mode,

(o) U.S. importer/exporter name, and

(p) Foreign importer/exporter name.

33. For the last two categories ((o) U.S. importer/exporter name and (p) foreign importer/exporter name), the Center's FOIA request asked that the Service process the information "pursuant to the protocol established in response to *Center for Biological Diversity v. US Fish and Wildlife Service*, 4:21-cv-00465-AMM under which the Service will provide an alternate column of data that identifies the relevant industry involved in the import/export – i.e., identifying if the import or export is for the pet trade, fashion, décor, trophy trade, individual, scientific institution, biomedical, or such."

34. The Center received confirmation that its July 8, 2026 FOIA request was received the same day.

35. On August 18, 2026, the Center received a letter from the Service acknowledging the July 8 FOIA request, granting the Center's request for a fee waiver, and indicating that the Service would "provide records . . . no later than March 15, 2027."

36. Although the statutory timeframe for responding to the FOIA request has long since expired, the Service still has not provided Plaintiff with a substantive response to its requests, nor has it provided Plaintiff with any of the requested information.

37. The Service previously routinely released all LEMIS data, including quantities, countries of origin, and importer/exporter names, to requesters through FOIA in a timely manner.

**PLAINTIFF'S CLAIM FOR RELIEF**

38. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

39. Plaintiff has a statutory right of access to the LEMIS data it requested under FOIA, and there is no lawful basis for the Service's withholding of this information.

40. The Service's failure to disclose the LEMIS data responsive to the Center's FOIA request violates FOIA, 5 U.S.C. § 552(a)(3), and injures Plaintiff in the manner described herein.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

(A) Declare that the Service's failure to provide the requested records violates FOIA, 5 U.S.C. § 552(a)(3);

(B) Order the Service to promptly provide Plaintiff with all information that is responsive to its FOIA request;

(C) Award Plaintiff its attorneys' fees and litigation expenses pursuant to 5 U.S.C. § 552(a)(4)(E); and

(D) Grant such other and further relief as the Court may deem just and proper.

Dated: November 10, 2026

Respectfully submitted,

/s/ *Tanya Sanerib*
Tanya Sanerib (DC Bar No. 473506)
Center for Biological Diversity
1025 1/2 Lomas Blvd NW
Albuquerque, NM 87102
Phone: (206) 379-7363
Email: tsanerib@biologicaldiversity.org

Sarah Uhlemann (DC Bar No. 501328)
Center for Biological Diversity
120 State Avenue NE #268
Olympia, WA 98501
Phone: (206) 327-2344
Email: suhlemann@biologicaldiversity.org

*Attorneys for Plaintiff*
*Center for Biological Diversity*